UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at LONDON**

| | |
|---|---|
| HAROLD DEAN CALDWELL, JR., ) | |
| ) | |
| Plaintiff, ) | Civil No. 6:17-cv-226-JMH |
| ) | |
| V. ) | |
| ) | |
| NANCY A. BERRYHILL, Acting ) | **MEMORANDUM OPINION AND ORDER** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

\*\*\*\*

Plaintiff Harold Dean Caldwell brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will **AFFIRM** the Commissioner's decision, as it is supported by substantial evidence.

**I.**

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a de novo review,

1

resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *Id.; see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## II.

In January 2014, Plaintiff filed a Title XVI application for supplemental security income ("SSI"), alleging disability as of March 1, 2010 (Tr. 318). Plaintiff later amended his alleged disability date to January 15, 2014, the date of his current protective filing for SSI (Tr. 149). Plaintiff's claims were denied

2

initially and on reconsideration (Tr. 222-223). After a hearing (Tr. 147-178), an Administrative Law Judge ("ALJ") reviewed the evidence of record and denied plaintiff's application (Tr. 12-33). The ALJ's decision became the final determination of the Commissioner when the Appeals Council declined review of it.

**III.**

**Statement of the Facts**

Plaintiff was 40 years old when he allegedly became disabled on January 15, 2014 (as amended), and 42 years old as of the Commissioner's final decision on April 26, 2016 (Tr. 318). Plaintiff has an 11th grade education and past relevant work as a heating and air conditioning technician, laborer (machine operator), and loader operator (dump truck driver) (Tr. 172, 344). In conjunction with his current application, Plaintiff initially alleged he was unable to work due to numerous physical impairments, as well as depression (Tr. 343).

**(a) Medical records relevant to Plaintiff's alleged impairments**

A large part of the medical evidence in the administrative record concerns a prior period, which resulted in a previous ALJ's decision that Plaintiff was not disabled through October 5, 2012 (Tr. 182-195).

During the current administrative proceedings, late February 2014 treatment notes indicate that Plaintiff had sciatica pain with complaints of numbness in his legs (Tr. 597).

Also during the current administrative proceedings, in late March 2014, Kathleen M. Monderewicz, M.D. consultatively examined Plaintiff (Tr. 586-592). Dr. Monderewicz noted Plaintiff's complaints of a history of chronic lower back pain dating back to May 1992, which he reported as interfering with activities such as doing yard work. Plaintiff also reported problems with shortness of breath but did not use inhalers, nebulizers, or oxygen; with no emergency room treatment or hospitalizations for respiratory problems. Plaintiff also reported a diagnosis of Hepatitis C in 1999, but he had never received Interferon therapy or followed up on the condition. Plaintiff also reported two episodes of acute pancreatitis attributed to alcohol use.

On examination, Plaintiff ambulated with a left limp, but he did not require the use of a handheld assistive device (Tr. 589). Dr. Monderewicz's examination of Plaintiff's dorsolumbar spine revealed normal curvature with no evidence of paravertebral muscle tenderness or spasm. Motor strength was weak on the left lower extremity with hip flexion and abduction at 4/5, but there was no evidence of atrophy noted (Tr. 590). Dr. Monderwicz provided diagnoses of Hepatitis C, history of acute pancreatitis attributed to alcohol use, tobacco use with history of shortness of breath,

4

chronic lumbosacral back pain with left lumbar radiculopathy, and non-tender decreased range of motion of the cervical spine with no evidence of cervical radiculopathy (Tr. 591). Dr. Monderwicz opined that prolonged sitting, standing, and walking, as well as bending, stooping, squatting, and heavy lifting and carrying, would be limited by chronic low back pain and left lumbar radiculopathy. Use of Plaintiff's upper extremities for overhead reaching and heavy pushing and pulling was limited by low back pain with shoulder range of motion decreased more on the left side (Tr. 591-592).

In November 2014, James R. Bean, M.D., opined that Plaintiff was incapable of performing light or sedentary work at that time. However, he further opined that it was a strong probability that decompression and fusion at L4-L5 would give Plaintiff a sufficient amount of relief to make him employable in, at least, a light exertion occupation (Tr. 612). In January 2015, a posterior lumbar interbody fusion surgery at L4-L5 of Plaintiff's lumbar spine was performed by Dr. Bean (Tr. 619). In April 2015, Plaintiff reported to Dr. Bean that his numbness was improved but that he still experienced pain. At that time, just three months after the fusion and decompression surgery, Dr. Bean recommended Plaintiff use only over-the-counter Aleve for pain (Tr. 980).

Subsequent examinations have yielded grossly normal results without evidence of any significant orthopedic findings or

neurological deficits. At a January 2016 emergency room examination at Harlan ARH Hospital, Plaintiff was not in acute distress and walked without any trouble. Neurologically, Plaintiff had no lower extremity weakness or sensory findings, with normal strength and tone, and equal and symmetrical reflexes. Plaintiff was also found to have adequate range of motion (Tr. 989).

Plaintiff has also reported a history of breathing problems but that he continued to smoke cigarettes. November 2014 X-rays of Plaintiff's chest showed signs of bronchitis but no active cardiopulmonary process (Tr. 940).

The administrative record does not disclose that Plaintiff's treating providers placed him on any permanent physical restrictions.

In March 2014, William R. Rigby, Ph.D., provided a consultative psychological examination of Plaintiff (Tr. 579-583). Dr. Rigby noted Plaintiff's report of longitudinal chronic depression (Tr. 579). However, on examination, Plaintiff was fully alert and oriented with intact concentration and attention. Dr. Rigby observed that Plaintiff's mood was moderately depressed. However, Plaintiff exhibited an intact short-term and long-term memory, and there was no psychotic disturbance noted (Tr. 583). Plaintiff reported using OxyContin for a previous five or six-year period and that he also used to drink, but that he had no present drug or alcohol problems. Plaintiff did report a one pack per day

use of cigarettes (Tr. 581). Dr. Rigby reported that Plaintiff appeared free of major mental health problems such as psychotic conditions, with no prior outpatient mental health or substance abuse treatment. Dr. Rigby also noted that Plaintiff was previously incarcerated because of a burglary and DUI and did not have a driver's license. Dr. Rigby found Plaintiff's depression to be moderate but exacerbated by the death of his father approximately a month and a half prior to the examination (Tr. 582).

Dr. Rigby diagnosed Plaintiff with depressive disorder NOS and assessed a GAF score of 70 (Tr. 583). Dr. Rigby further opined that Plaintff could understand, retain, and follow simple instructions with no impairment in sustaining concentration and persistence to complete tasks in a normal time. Dr. Rigby also opined that Plaintiff had moderate impairment in maintaining social interactions with supervisors, friends, and the public and in adapting and responding to the pressures of normal day-to-day work activity (Tr. 583).

In March 2014, state agency psychologist Lea Perritt, Ph.D. completed a Psychiatric Review Technique Form (Tr. 215-216). Based on the results of her assessment, Dr. Perritt concluded that Plaintiff would have mild restrictions in activities of daily living and mild difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace with no repeated episodes of decompensation. Dr. Perritt ultimately

7

indicated that she adopted the prior ALJ's finding that Plaintiff's mental impairment was not severe (Tr. 215-216).

In August 2014, state agency psychologist, Kevin Ragsdale, Ph.D., completed a Psychiatric Review Technique Form and Mental Residual Functional Capacity assessment of Plaintiff (Tr. 235-236, 240-242). Dr. Ragsdale also opined that Plaintiff would have mild restrictions in activities of daily living, with moderate difficulties in maintaining social functioning but only mild difficulties in maintaining concentration, persistence, or pace and had no repeated episodes of decompensation (Tr. 235).

In August 2014, state agency physician Donna Sadler, M.D., completed a Physical Residual Functional Capacity assessment of Plaintiff. Dr. Sadler found that Plaintiff retained the functional capacity to perform light exertion work with some postural and environmental limitations (Tr. 237-240).

**(b) February 5, 2016 Administrative Hearing Testimony**

Plaintiff testified that he was 42 years old, 6'0" tall and weighed 260 pounds (Tr. 153). He said he no longer has a driver's license due to a DUI several years earlier (Tr. 156). Plaintiff said that he had an 11th grade education and had been unable to pass the GED test (Tr. 157). Plaintiff then testified as to his past relevant work activities (Tr. 157-162). He said that he does not help with household chores or cooking (other than grilled cheese and use of the microwave) and that his ex-girlfriend helped

8

him with the dishes and laundry, coming by almost every day (Tr. 163-164). Plaintiff testified that he liked to look at guns and "ammo" books and magazines as a hobby (Tr. 165). Plaintiff said that he has an eight-year old son, and while Plaintiff does not see his son on a regular basis, he talks to his son on the phone "every now and then" (Tr. 166). He also indicated that he had not seen his mother in a "couple of years" (Tr. 166). Plaintiff said that he was still smoking a half a pack of cigarettes daily (Tr. 167). He testified that the lower back surgery had not resulted in good results and that he still experienced pain and numbness in his lower back and left lower extremity (Tr. 168). Plaintiff testified that he could stand and sit for 20-30 minutes at a time (Tr. 168). He said that he only had a "good day" about once a month (Tr. 169). Plaintiff said that he had depression or anxiety "All the time." (Tr. 170). He said that it was not that he did not like being around people but that he would get "real shaky." (Tr. 171).

A vocational expert (VE), Kristine E. Skahan, also testified (Tr. 171-177). The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education and work experience, with the residual functional capacity (RFC)4 the ALJ ultimately found for Plaintiff. The VE testified that such an individual could not perform Plaintiff's past relevant work but could perform the representative unskilled sedentary exertion occupations of final assembler optical goods, circuit board assembler, and document

9

preparer (Tr. 174-175). The VE testified that her testimony did not conflict with the Dictionary of Occupational Titles (Tr. 175).

### (c) ALJ's April 26, 2016 Decision

After a careful review of the record, the ALJ found that Plaintiff had specific severe physical and mental impairments (Tr. 14, Finding No. 2), but that Plaintiff's impairments did not meet or equal the severity of a listed impairment (Tr. 15, Finding No. 3). The ALJ found that Plaintiff had the RFC to perform sedentary exertion work with additional postural, environmental and mental limitations (Tr. 17, Finding No. 4), and that his complaints of disabling limitations were not entirely credible (Tr. 18). The ALJ found that there were a significant number of jobs in the national economy that Plaintiff retained the RFC to perform, including the representative unskilled sedentary exertion occupations of final assembler optical goods, circuit board assembler, and document preparer (Tr. 27-28, Finding No. 9). Thus, the ALJ found Plaintiff was not disabled under the Act (Tr. 28, Finding No. 10).

## Analysis

Within the context of his general substantial evidence argument, other than briefly making essentially undeveloped arguments as to the ALJ's mental residual functional capacity (RFC) findings and a purported failure to identify a significant number of jobs in the national economy at step five of the sequential evaluation, Plaintiff has restricted his argument to the issue

specifically discussed below. Plaintiff's Brief [DE 12-1, at 20]. Additionally, a considerable amount of the medical evidence set forth by Plaintiff pre-dates the prior October 5, 2012 ALJ's decision (Tr. 182-195); [DE 12-1, at 5-7]. Therefore, the Commissioner has not provided a recitation of the medical evidence not at issue in the case before the Court and discusses the evidence before the ALJ only with respect to those issues specifically argued by Plaintiff.

Plaintiff only presents one specific and narrow unsubstantiated challenge to the ALJ's consideration of his disability claim. Specifically, Plaintiff argues that the ALJ did not consider the effects of his subjective complaints in assessing his RFC. [DE 12-1, at 20]. Plaintiff has thus waived any arguments as to any other issue not raised or argued with specificity in his brief. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("[W]e limit our consideration to the particular points that Hollon appears to raise in her brief on appeal."); United States v. Elder, 90 F.3d 1110, 1118 (6th Cir. 1996) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation omitted)); Stiltner v. Comm'r of Soc. Sec., 244 F. App'x 685, 686 (6th Cir. 2007) (unpublished) (arguments not included in the claimant's brief are waived).

Plaintiff briefly argues that the ALJ did not find that depression was a severe impairment. [DE 12-1, at 20]. Plaintiff is mistaken. The ALJ specifically found that depression was indeed a severe impairment (Tr. 14, Finding No. 2).

In the case before the Court, Plaintiff relies on his own subjective reports about his symptoms to establish his alleged disability, which, contrary to Plaintiff's argument, the ALJ carefully considered and reasonably discounted (Tr. 14, 17-26, Finding No. 4). [DE 12-1, at 20]. Plaintiff's argument—which purports to challenge the ALJ's treatment of lay testimony and application of the so-called "two-step process" for evaluating subjective statements regarding symptoms under Social Security Ruling 96-7p [DE 12-1, at 21]—is essentially a challenge to the ALJ's finding that his statements as to the intensity, persistence, and limiting effects of his symptoms were not consistent with the objective medical and other evidence of record. An ALJ is required to "assess a claimant's RFC based on all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). Although this evidence includes a claimant's statements regarding his symptoms, such subjective complaints cannot independently support a finding of disability. 20 C.F.R. §416.929(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled"). The ALJ's analysis of Plaintiff's symptom complaints is entitled to particular deference from this Court. *See Cruse v.*

*Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (credibility determinations are particularly within the province of the ALJ and are "to be given great weight.") (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

The agency's sub-regulatory guidance regarding the evaluation of symptom testimony, found in SSR 96-7p, was superseded by SSR 16-3p, 2016 WL 1237954 (Mar. 24, 2016), which was effective March 2016. As such, SSR 16-3p was in effect at the time of the ALJ's decision, and Plaintiff's citation to SSR 96-7p is misplaced. In any event, the analysis in this case does not turn on which SSR applies as the ALJ appropriately evaluated [Plaintiff's] symptoms using the regulatory framework set forth in 20 C.F.R. § 416.929, which has not changed. The most salient point in SSR 16-3p is that subjective symptom evaluation is not about an individual's general character or truthfulness, see SSR 16-3p, 2016 WL 1119029, at *10, and [Plaintiff] does not suggest that the ALJ's findings here were based on an evaluation of his overall character or truthfulness, so as to contravene SSR 16-3p. As explained in detail above, the ALJ's regulation-based and well-supported reasons for discounting [Plaintiff's] symptoms is consistent with the guidance in SSR 16-3p.

Here, the ALJ extensively reviewed Plaintiff's record and reasonably concluded that he retained the RFC to perform a range of unskilled sedentary work despite his claims of completely

disabling limitations. It is fundamental that an ALJ can base a decision that a claimant's symptoms are not as limiting as the he alleges on inconsistencies between those claims and the rest of the record. See 20 C.F.R. § 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating and nontreating source or other persons about how your symptoms affect you.") In this case, the ALJ's conclusion that Plaintiff's allegations regarding the severity of his symptoms was inconsistent with the record is supported by the medical evidence. Further, the treatment records fail to disclose that any of Plaintiff's treating providers placed any permanent physical or mental restrictions on him.

As pointed out above, Dr. Bean recommended Plaintiff use only over-the-counter Aleve just three months after the fusion and decompression surgery. Plaintiff's subsequent relatively benign objective findings all support the ALJ's reasonable RFC finding (Tr. 26). As the ALJ noted, Plaintiff's treatment and examination records showed insufficient objective findings to support his claims of disabling pain and other symptoms (Tr. 579-583, 586-592, 940, 980, 989).

14

For instance, at a January 2016 emergency room examination at Harlan ARH Hospital, Plaintiff was not in acute distress and walked without any trouble. Neurologically, Plaintiff had no lower extremity weakness or sensory findings, with normal strength and tone, and equal and symmetrical reflexes. Plaintiff was also found to have adequate range of motion by Harlan ARH emergency room providers (Tr. 989). Further, the ALJ justifiably accorded "some weight" to examining physician, Dr. Monderwicz's assessment that Plaintiff should avoid prolonged sitting, standing, and walking, as well as bending, stooping, squatting, and heavy lifting and carrying would be limited by chronic low back pain and left lumbar radiculopathy (Tr. 591-592).

The ALJ reasonably found that Plaintiff's impairments certainly caused exertional, postural, and environmental limitations, but justifiably found that Dr. Monderwicz's opinion was rather vague in that she failed to assess specific limitations as to how much Plaintiff could lift and for how long he could sit, stand, and walk, making it less useful in determining the exact level of Plaintiff's functional capacity (Tr. 25).

The ALJ indicated that his RFC finding that Plaintiff could perform the least physically demanding requirements of sedentary work with additional non-exertional limitations was supported by the opinions of reviewing state agency medical consultants. Notwithstanding, the ALJ pointed out because probative evidence

was received subsequent to state agency medical consultant Dr. Sadler's August 2014 opinion, he had reduced Plaintiff's physical RFC to sedentary exertion from Dr. Sadler's opinion that Plaintiff was capable of light exertion work activity (Tr. 23).

Moreover, as to Plaintiff's allegations of a severe mental impairment, the record does not contain any opinions from treating or examining physicians indicating that Plaintiff is disabled or have mental limitations greater than those determined in the decision before the Court. Plaintiff has received no mental health therapy, with the record showing only psychotropic medication prescribed by his treating doctor for an alleged depressive disorder. There is no objective evidence that Plaintiff has been hospitalized for mental health concerns during the relevant period or that he required any emergency room treatment for chronic exacerbations of his mental symptoms.

Further, although state agency psychologist, Dr. Perritt found that Plaintiff was not subject to a severe mental impairment and adopted the previous ALJ's October 2012 finding, the ALJ reasonably determined that Plaintiff was now subject to a severe mental impairment in that it caused more than a minimal limitation in his ability to perform basic work activities (Tr. 23). See 20 C.F.R. 416.927(e)(2)(i) (state agency medical and psychological consultants . . . are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation);

Moon v. Sullivan, 923 F.2d 1175, 1179, 1183 (6th Cir. 1990) (ALJ reasonably relied on reviewing source opinions).

In March 2014, Dr. Rigby provided a consultative psychological examination of Plaintiff (Tr. 579-583). Dr. Rigby reported that Plaintiff appeared free of major mental health problems such as psychotic conditions. Dr. Rigby diagnosed Plaintiff with depressive disorder NOS and assessed a GAF score of 70 (Tr. 583). Dr. Rigby further opined that Plaintff could understand, retain, and, follow simple instructions; with no impairment in sustaining concentration and persistence to complete tasks in a normal time. Dr. Rigby also opined that Plaintiff had moderate impairment in maintaining social interactions with supervisors, friends, and the public; and in adapting and responding to the pressures of normal day-to-day work activity (Tr. 583). The ALJ reasonably accorded Dr. Rigby's opinions "significant weight" as he deemed it consistent with the total record including his own examination findings, lack of mental health treatment, and grossly normal mental status examinations (Tr. 24). See 20 C.F.R. § 416.920a (evaluation of mental impairments); see also SSR 85-16, 1985 WL 56855 (residual functional capacity for mental impairments).

Additionally, despite alleged respiratory problems, Plaintiff continued to smoke cigarettes undermining the persuasiveness of his claim of debilitating breathing issues. See 20 C.F.R. §

416.929(c)(4) (stating an ALJ must consider inconsistencies in the evidence).

In short, consistent with 20 C.F.R. § 416.929, the ALJ reasonably evaluated the Plaintiff's statements regarding his symptoms in relation to the relevant medical and other evidence of record and concluded based on all of the evidence that despite Plaintiff's claims of greater limitations, he retained the RFC to perform the least physically demanding requirements of sedentary exertion level work activities with additional specific postural, environmental and mental limitations (Tr. 17-26, Finding No. 4).

In sum, in limiting Plaintiff to sedentary exertion work with numerous additional postural, environmental and mental limitations, the ALJ adequately accounted for Plaintiff's physical and mental impairments, singly and in combination.

To the extent that Plaintiff suggests that the evidence before the Court is open to another interpretation that would support his claim that he meets the strict standards for disability under the Act, the Court should decline to reweigh the evidence in this fashion. Again, the ALJ made his findings of fact and conclusions of law after careful consideration of the entire record; this would include that evidence of record associated with Plaintiff's claims of disabling symptoms (Tr. 14, 17-26, Finding No. 4). Because the ALJ's RFC finding as to extent of Plaintiff's work-related limitations was supported by substantial evidence, the Court

cannot reweigh the evidence and therefore should affirm the ALJ's decision. *Longworth v. Commissioner*, 402 F.3d 591, 595 (6th Cir. 2005). To be sure, even if substantial evidence exists to support Plaintiff's claim, the Court should still affirm the Commissioner's decision because it is supported by substantial evidence, as demonstrated above. *See Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854-55 (6th Cir. 2010) ("Even if this Court might have reached a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence.")

## Conclusion

For the foregoing reasons, **IT IS ORDERED** that the Commissioner's final decision is supported by substantial evidence and shall be **AFFIRMED** by the Court.

This the 15th day of February, 2019.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge